UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JANET L. CODY,

                                Plaintiff,                  <u>MEMORANDUM</u>
                                                                       <u>OPINION AND ORDER</u>

    -against-

                                                                       CV 07-3735 (LDW) (ETB)

NEW YORK STATE DIVISION OF STATE
POLICE, JAMES KRANIK (sued in his Official
and Individual Capacity Pursuant to N.Y. Executive
Law §§ 290 et seq.), and JOSEPH CRISPINO (sued
in his Official and Individual Capacity Pursuant to
N.Y. Executive Law §§ 290 et seq.),

                                Defendants.
----------------------------------------------------------------X

      Before the court is the motion of the plaintiff, Janet L. Cody, to compel the production of certain police records from defendants, the New York State Division of State Police, James Kranik and Joseph Crispino, including personnel complaints, field training observation reports and performance appraisals of various nonparty probationary troopers, which plaintiff asserts are necessary to demonstrate that she was discriminated against on the basis of her gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 <u>et seq.</u> and New York Executive Law §§ 290 <u>et seq.</u> Defendants oppose the production of such records on the ground that, pursuant to New York State Civil Rights Law § 50-1, plaintiff has failed to set forth a "factual predicate" warranting the intrusion of privacy and production of these records. For the following reasons, plaintiff's motion is granted.[1]

---

[1] The Court is grateful for the assistance of Joseph Shanahan, a summer intern and second-year law student at Hofstra University School of Law, for his assistance in the preparation of this Memorandum Opinion and Order.

FACTS

Plaintiff, Janet Cody ("plaintiff" or "Cody"), brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000 et seq., and New York Executive Law §§ 290 et seq., against the New York State Division of State Police ("State Police"), the Hawthorne Station Sergeant Commander, James Kranick ("Kranick"), and Line Sergeant Joseph Crispino ("Crispino"), alleging gender-based discriminatory treatment in the terms of her employment.

After serving as a New York City Police Officer for two and one-half years, Cody was hired by the State Police and began training as such at the New York State Police Academy in Albany, New York, on February 14, 2005. (Am. Compl. ¶¶ 20, 22-23, 53.) Upon her completion of the first training phase in Albany, Cody was transferred in August 2005 to Troop L, located in Valley Stream, New York, for field training. (Id. ¶¶ 23-24.) Cody alleges that during her field training, her gender was discussed openly by her superiors, specifically with regard to her ability to perform the same tasks as her male colleagues. (Id. ¶¶ 36-37.) Cody further alleges that similarly situated male troopers were provided more attention than she was during training and that her training consisted of writing tickets for her supervisor's file or driving into the woods during night shifts so that her training officer could take naps. (Id. ¶¶ 44-46.) As an example of the alleged disparate treatment that she received, Cody asserts that she performed a "Police stop" in a similar manner as that of Probationary Trooper Adam Brody ("Brody"), who is male, yet only she was required to stay after her regular tour of duty to practice such basic tactics. (Id. ¶¶ 49, 51-52, 57.) Due to her alleged inadequate performance, Cody's probationary period was extended. (Id. ¶ 59.)

Following field training in Valley Stream, Cody was reassigned to the State Police Station in Hawthorne, New York. (Id. ¶ 69.) While stationed at Hawthorne, Cody alleges that she received disparate treatment in numerous instances, including: (1) being assigned to patrol the parking lot of the Indian Point power plant more frequently than her male colleagues; (2) receiving a reprimand for failing to clear snow off a trooper car in an adequate fashion, even though other male troopers had failed to do so as well; and, (3) being singled out for arriving late due to inclement weather despite male troopers' consistent tardiness. (Id. ¶¶ 70-78, 81-95.) Cody further alleges that she was wrongly reprimanded for both the unsuccessful operation of a law enforcement database and for leaving ten minutes earlier than permitted, while similarly situated male troopers were not disciplined for committing the same acts. (Id. ¶¶ 100-01, 104-07.)

In June 2006, Cody was required to attend a status hearing to determine her personal integrity. (Id. ¶¶ 150, 154.) Despite feeling that she performed in a manner similar to that of her male colleagues, Cody apologized for any wrongdoing on her part. (Id. ¶ 155-56.) On August 7, 2006, while recovering from a medical procedure at home, Cody received a letter from the Bureau of Criminal Investigations that informed her that she would not be promoted to full-time trooper and terminated her employment with the State Police. (Id. ¶¶ 164-66.)

Approximately one month after her termination, Cody learned that other male troopers who had also been terminated were not disciplined as severely as she. (Id. ¶ 175.) Specifically, Troopers Curtis Feggins ("Feggins") and Frederick Ortiz ("Ortiz") were not disciplined for their involvement in separate vehicular accidents involving State Police property. (Id. ¶ 176.) Furthermore, Cody learned that Trooper Aaron Collazo ("Collazo") lied on a police report

involving insurance fraud, was arrested and fingerprinted, yet was paid until his last day on the force and given the choice to resign rather than face misdemeanor charges.[2] (Id. ¶ 178.)

On September 6, 2007, Cody instituted this action, alleging that she received disparate treatment during her employment with the State Police because of her gender. By motion dated June 18, 2008, plaintiff moves to compel the production of certain State Police records, including any personnel complaints, field training observation reports, and performance appraisals of Troopers Brody, Collazo, Feggins, and Ortiz, all of whom are male and were employed with the State Police during the same time as plaintiff. (Mot. to Compel 1). Defendants oppose the production of such records and assert that they are shielded from discovery by New York State Civil Rights Law § 50-a unless there is some factual predicate to warrant intrusion into the privacy of the troopers' files, which they assert there is not. (Def.'s Opp'n 1).

## DISCUSSION

I.   Standard of Review

In federal civil rights cases, issues of privilege are governed by federal, not state, law. See King v. Conde, 121 F.R.D. 180, 187 (E.D.N.Y. 1988). Under federal law, there is no confidentiality privilege afforded to police records as there is under New York Civil Rights Law § 50-a. See id. In fact, "[i]n the context of a civil rights action asserted against police officers, no federal rule prohibits discovery of police personnel documents." McKenna v. Inc. Vill. of

---

[2] While the plaintiff's comparators - those terminated - are somewhat puzzling, it cannot be said that records of such persons have no relevance, as discussed infra.

Northport, 06 CV 2895, U.S. Dist. LEXIS 50934, at *21 (E.D.N.Y. Jul. 13, 2007). However, the nonexistence of a federal law in this area does not give license for free and unfettered discovery of police personnel documents. Rather, "[b]ecause no federal rule exists governing the kind[] of privilege[] asserted in [this] case[], . . . the magistrate must balance the interests favoring and opposing confidentiality in the discovery phase of litigation." King, 121 F.R.D. at 187.

To effectively balance such interests, courts rely on a two-prong test, established in King v. Conde, 121 F.R.D. 180 (E.D.N.Y. 1988). Under the first prong, the police bear the burden of making a "substantial threshold showing" that harm is likely to occur as a result of disclosure of the requested documents. Id. at 189. To make such a showing, the police must specify what documents are privileged and why they are so privileged. See id. So that the court may judiciously balance the factors for and against disclosure, the objection must also state, with particularity, "what interests would be harmed, how disclosure under a protective order would cause the harm, and how much harm there would be." Id. Furthermore, the objection must be accompanied by an affidavit from a responsible official within the agency who "has personal knowledge of the principle matters to be attested to in the affidavit or declaration." Id. Where "defendants have not satisfied their burden of justifying the application of any privilege, the Court will not shield the requested documents and information from disclosure based on Section 50-a or any other privilege." Melendez v. Greiner, 01 Civ. 07888, 2003 U.S. Dist. LEXIS, at *21 (S.D.N.Y. Oct. 22, 2003); see also McKenna, 2007 U.S. Dist. LEXIS 50934, at *26 (ordering disclosure of police officers' records where no specific harm established and only a generalized objection under Section 50-a offered); Gibbs v. City of New York, 243 F.R.D. 95, 96 (S.D.N.Y. 2007) (ordering disclosure where police failed to specify what documents were

privileged and the reasons for the privilege).

Provided that the defendants satisfy the first prong of the King analysis, the Court must then weigh the factors in favor of disclosure versus those against disclosure. See King, 121 F.R.D. at 190-91. Factors in favor of disclosure include the relevance of the documents to the plaintiff's case, their importance to the plaintiff's case, the strength of the plaintiff's case, and the importance of disclosure to the public interest. See id. at 194-95. On the other hand, factors such as (1) threats to a police officer's safety; (2) the invasion of a police officer's privacy; (3) the weakening of law enforcement programs; (4) the chilling of police internal investigative candor; (5) the chilling of citizen complaint candor; and, (6) the relevant policies behind state privacy laws all favor non-disclosure of police documents. See id. at 191-94.

However, even where no substantial harm is shown under the first prong of the analysis, an objection as to the relevance of the documents may prevent their disclosure. See Barrett v. City of New York, 237 F.R.D. 39, 42 (E.D.N.Y. 2006) (ordering relevant requested documents to be produced despite defendants' failure to specifically identify any harm that would result from production); Unger v. Cohen, 125 F.R.D. 67, 70 ( S.D.N.Y. 1989) (holding that where defendants made no substantial threshold showing of specific harm, the court had no choice but to order disclosure "unless defendants' objections on grounds of relevance are sustained"). The purpose of the relevance inquiry is only to "protect irrelevant materials from disclosure: to prevent fishing expeditions, not to safeguard privacy itself." King, 121 F.R.D. at 192. Thus, irrelevant records will not be subject to discovery even where defendants fail to meet the requirements for shielding the documents from disclosure under King. Conversely, if a record is deemed relevant to a plaintiff's case, it must be disclosed by the defendant. See id.; Mercado v.

Division of N.Y. State Police, 989 F. Supp. 521, 523 (S.D.N.Y. 1998) (ordering disclosure of ten disciplinary records of nonparty state troopers in Title VII action because "records might be relevant to prove that similarly situated white officers were treated differently").

II.     Defendants Have Failed to Make a Substantial Showing of Harm

Defendants allege that, because plaintiff has failed to show "some factual predicate" warranting intrusion into the four officers' files, New York Civil Rights Law § 50-a applies and, under such, disclosure of the requested records is not warranted. (Def.'s Opp'n 1). This argument, however, misplaces the applicable burden herein. As stated supra, it is the defendants, not the plaintiff, who bear the burden of demonstrating that disclosure will create substantial harm. Here, defendants fail to specify what, if any, interests would be harmed by disclosure and how disclosure with a protective order would cause such harm. Furthermore, defendants have neglected to submit the required affidavit from a responsible person within the State Police who can attest to why disclosure of the requested records will cause substantial harm. Accordingly, defendants have failed to satisfy the first prong of the King analysis and can only rely on relevance objections to prevent disclosure of the troopers' files.

III.    The Requested Files are Relevant in this Title VII Action

Defendants assert that plaintiff's attempt to procure the training observation reports, personnel complaints, and performance appraisals of four nonparty troopers amounts to nothing more than a fishing expedition. (Def.'s Opp'n 2.) Defendants argue that there is no reason to breach the policy of confidentiality where "plaintiff is requesting the personnel files of persons

<u>not</u> named as defendants and against whom no allegations of discrimination have been made." (<u>Id.</u>) This reasoning, however, avoids the central and primary concern in determining whether the documents should be disclosed - whether the information within those documents is relevant to the plaintiff's case. <u>See</u> <u>King</u>, 121 F.R.D. at 192. "[N]either state nor federal law contemplates denial to a litigant of information from personnel files or other documents if that information is necessary to the party's preparation of [her] case, even if the material may reveal matters that could cause embarrassment or other possible harm to another party, or even to a non-party." <u>Burke v. City of New York Police Dep't</u>, 115 F.R.D. 220, 225 (S.D.N.Y. 1987).

The within motion clearly seeks information that is relevant to plaintiff's claim. The observation reports, personnel complaints, and performance appraisals of the four nonparty troopers would only serve to demonstrate how similarly situated male officers were evaluated and disciplined. "[Any] evidence concerning the decision making process resulting in plaintiff's termination is obviously critically relevant here." <u>Mercado</u>, 989 F. Supp. at 523. This decision making process necessarily includes how plaintiff was trained and disciplined in comparison to her colleagues. Therefore, the documents requested by the plaintiff are relevant to her prosecution of this action and must be disclosed.

IV.     <u>Confidentiality</u>

While information contained within the requested files is relevant, information of a personal nature that is not necessary to the litigation may also be present. Therefore, any information of a personal nature, such as social security numbers, personal telephone numbers, and home addresses should be permitted redaction. <u>See</u> <u>McKenna</u>, 2007 U.S. Dist. LEXIS

50934, at * 27-28. Furthermore, these files must remain confidential and used only for purposes of this litigation, see id.; Melendez, 2003 U.S. Dist. LEXIS 19084, at *21; Mercado, 989 F. Supp at 523, pursuant to the terms of the Protective Order, annexed hereto, which the Court issues sua sponte.

CONCLUSION

For the foregoing reasons, plaintiff's motion to compel is granted.

Dated: Central Islip, New York
July 31, 2008

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JANET L. CODY,

                              Plaintiff(s),          <u>PROTECTIVE ORDER</u>

     -against-                                   CV 07-3735 (LDW) (ETB)

NEW YORK STATE DIVISION OF STATE
POLICE, JAMES KRANIK (sued in his Official
and Individual Capacity Pursuant to N.Y. Executive
Law §§ 290 et seq.), and JOSEPH CRISPINO (sued
in his Official and Individual Capacity Pursuant to
N.Y. Executive Law §§ 290 et seq.),

                              Defendant(s).
----------------------------------------------------------------X

       The court <u>sua sponte</u> hereby directs, pursuant to Fed. R. Civ. P., Rule 26(c), that the following provisions shall govern the handling of confidential information and documents in this action:

       1. <u>Definitions</u>. For purposes of this Order:

       (a) "confidential information" means the information contained in the documents ordered to be produced pursuant to the Memorandum Opinion and Order of the undersigned dated July 31, 2008, in addition to any appropriate future documents produced by either party in this action. It shall be the duty of the party who seeks to invoke protection under this Order to give notice, in the manner set forth hereinafter, of the documents and testimony to be covered hereby, and the duty of any other party or person to maintain confidentiality hereunder shall commence with such notice.

       (b) "Producing party" or "designating party" shall mean the party (and its outside

counsel) who is producing information to another party and who deems that information confidential.

(c)  "Inspecting party" or "non-designating party" shall mean the party (and its outside counsel) who receives the confidential information supplied by the producing party.

(d)  "Outside counsel" or "counsel" shall mean the law firms engaged by the plaintiff and the defendant to represent them in this litigation.

(e)  "Document" shall include "writings, drawings, graphs, charts, photographs, phone records, and any other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form" as set forth in Rule 34(a) of the Federal Rules of Civil Procedure.

(f)  "Party," in the case of a party to this action which is a corporation, means any officer, director, shareholder, or employee of such party, all of whom shall be bound by the provisions of this Protective Order.

(g)  "Produce" means the transmission of any "document" during the course of and in connection with this litigation, including appeals therefore, to a "party" or its "attorneys," whether voluntary or involuntary, whether pursuant to request or legal process, and whether in accordance with the Federal Rules of Civil Procedure or otherwise.

(h)  "Person" means, in the plural as well as the singular, any individual, corporation, firm, association, partnership, business trust, government body or any other legal or business entity, unless specified herein to the contrary.

2.  Documents

(a)  Documents produced in the course of discovery herein (either formally or informally)

which the producing party deems to contain confidential information may be designated as confidential by the producing party and the documents or portions thereof deemed to be confidential which are copies and delivered to counsel for the inspecting party shall be marked "CONFIDENTIAL".

(b)  The producing party shall designate the document as confidential at the time of its production and/or inspection by the inspecting party.  The producing party's failure to do so, however, does not waive its right to designate that document or any portion thereof as confidential, if within thirty (30) days after production, notification is given as to the confidential status of the document.  Such a post-inspecting party shall have no obligation, responsibility or liability for, or with respect to, any pre-designation dissemination of that document or the information contained therein.

3.  <u>Deposition Testimony</u>.

If confidential information is contained in deposition, trial or other testimony, the transcript may be designated as containing confidential information in accordance with this Order by notifying the other party (1) on the record, at the time of the testimony, or (2) in writing, within thirty (30) days of receipt of the transcript of the specific pages and lines of the transcript which contain confidential information.  At any deposition session when outside counsel for a party deems that the answer to a question will result in the disclosure of confidential information within the meaning of this Order, outside counsel may direct that the question and answer be transcribed separately from the remainder of the deposition and if filed with the Court, shall be filed in a sealed envelope marked in the manner set forth in Paragraph "5" hereof.  When such a direction has been given, the testimony shall be disclosed only to those

individuals specified in Paragraph "6" hereof.  Outside counsel for the party whose confidential information is involved may also request that all persons other than the reporter, outside counsel, and individuals specified in Paragraph "6" hereof leave the deposition room during the confidential portion of the deposition.  The failure of such other persons to comply with a request of this type shall constitute substantial justification of counsel to advise the witness that he need not answer a question seeking the revelation of confidential information.

    4. <u>Interrogatory Answers</u>.

If an interrogatory answer contains confidential information, the answer shall be provided in a separate document, appended to the main body of answers and incorporated by reference therein.  The response to the interrogatory in the main body of the answers should be "Requests confidential information, see response in confidential addendum, which response is incorporated fully herein by reference."

    5.  Any confidential information including transcripts of depositions or portions thereof, exhibits, answers to interrogatories, and responses to requests for admissions which have therefore been designated as comprising or containing confidential information, or any pleading or memorandum or other document purporting to reproduce or paraphrase such information, if filed with the Court, shall be filed in sealed envelopes or other appropriately sealed containers on which shall be endorsed the title of this action, an indication of the nature of its contents, the word "Confidential" and a statement substantially in the following terms:

> "CONFIDENTIAL.  Filed Pursuant to Protective Order by
> _____.  Not to be opened
> nor the contents revealed except (1) to the Court and then resealed,
> (2) by agreement of the parties, or (3) by prior order of this Court."

The party filing the documents shall serve notice upon all other parties that the above

procedure is being invoked.

At the trial of this action or at any hearing relating to this action before any judicial officer, subject to the rules of evidence and order of the Court, a party may use any confidential information for any purpose, provided that adequate prior notice of such use is given to counsel for the opposing party to permit the opposing party the opportunity to obtain appropriate protection from the Court, including a request to the Court that the courtroom be cleared of persons not subject to the Order and that the Court employees be advised as to the terms of this Order.

6. (a) Each and every page or sheet of all transcripts of depositions, exhibits, answers to interrogatories and requests for admissions, copies thereof, other documents and all information obtained by an inspection of files, facilities or documents by outside counsel for any party pursuant to pretrial discovery in this action that have been designated by the other party as comprising or containing its confidential information shall be marked "CONFIDENTIAL" and shall be retained by the receiving party's outside counsel and shall not be disclosed or used by any non-designated person other than those listed below. Any material marked "CONFIDENTIAL" shall be used for prosecuting and/or defending the within action only, and for no other purpose. Any unauthorized disclosure in violation of the order shall be subject to discipline by the contempt powers of this court.

(b) Confidential information shall not be disclosed to any person other than (i) a party to this action and outside counsel for the parties to this litigation and office personnel employed or engaged in the preparation for, or in aiding in the trial of this action; (ii) independent outside persons (i.e., persons not employees of a party), not to exceed five, requested by counsel to

furnish technical or expert services or to give testimony with respect to the subject matter for the trial of this action; and (iii) the Court including necessary secretarial and law clerk personnel assisting the Court.

(c) Each person to whom disclosure may be made by counsel for a party shall first be identified not less than ten (10) business days before the disclosure, to counsel for the party designating the information as confidential and shall, in a written instrument delivered beforehand to such counsel, acknowledge that he (or she) is fully familiar with the terms of this Stipulated Protective Order and agrees in writing, to comply with, and be bound by, such Order until modified by further Order of this Court or by agreement of the parties hereto. Counsel for the designating party shall have the right to object, in writing within five (5) days after receiving the required identification, to such disclosure to the person or persons selected by counsel for the non-designating party and should such objection be made, no disclosure shall be made to such objected to person without leave of the Court.

7. No person or party shall disclose to anyone not specified in Paragraph "6" any information designated as confidential under this Protective Order, without prior written consent of the designating party or further order of this Court. Confidential information disclosed pursuant to this Protective Order shall not be used by a recipient thereof for any purpose other than for purposes of preparing this action for trial.

8. The restrictions on dissemination of confidential information contained herein shall not apply to information which, prior to disclosure hereunder, is either in the possession or knowledge of an inspecting party or a person who, absent this Order, is under no restriction with respect to the dissemination of such confidential information or to information which is public

knowledge or which, after disclosure, becomes public knowledge other than through an act of omission of a party receiving the information designated as confidential, provided that if a party to this Order who is to receive any confidential information disagrees with respect to its designation as confidential information, in full or in part, it shall so notify the producing party in writing, and they will thereupon confer as to the status of the subject information proffered within the context of this Order within ten (10) days of the sending of such notice. If the recipient and producing parties are unable to agree to the status of the subject information, any party to this Order may raise the issue of the designation of such a status to the Court upon 10 days written notice. The Court may raise the issue of designation of the confidential status without any request from a party. In any disagreement over the designation of confidential information, the designating party bears the burden of showing that the designated information is confidential information within the scope of this Order. No party to this action shall be obligated to challenge the propriety of any designation, and a failure to do so shall not preclude a subsequent challenge on the propriety of such designation and shall not constitute an admission that any information is in fact confidential.

9. This Order is intended to provide a mechanism for the handling of confidential information and documents for which there is no objection other than confidentiality. Each party reserves the right to object to any disclosure of information or production of any documents it deems confidential on any other ground it may deem appropriate, and any party may move for relief from, or general or particular modification of, the mechanism for maintaining confidentiality herein set forth or the application of this Order in any particular circumstance.

10. This Protective Order may be amended with leave of the Court, by the agreement of

counsel for the parties in the form of a stipulation submitted to the court for approval, or by the court sua sponte after affording the parties, and any affected non-party, the opportunity to be heard. If the parties cannot agree to an amendment, then a formal motion to amend must be filed with the Court. This Protective Order is intended to regulate the handling of confidential information and documents during the pretrial period of this litigation, but shall remain in force and effect until modified, superseded or terminated on the record by agreement of the parties hereto or by order of the Court.

    11. Upon final termination of this litigation, each party that is subject to this Order shall assemble and return to the producing party all items containing the producing party's confidential information produced in accordance with this Order, including all copies of such matter which may have been made, but not including copies containing notes or other attorney work product that may have been placed thereon by counsel for the receiving party. All copies containing notes or other attorney's work product shall be destroyed promptly after final termination by the receiving party who will so inform the disclosing party. As an alternative to the return of all such confidential information, the recipient may destroy such confidential information. Promptly after the return or destruction of items containing the producing party's confidential information, the receiving party shall by letter certify that all items containing the producing party's confidential information have been returned and/or destroyed, respectively. Receipt of all material returned to the producing party shall be acknowledged in writing if requested by the receiving party and the receiving party has specified what has been returned by it. Notwithstanding the preceding sentences of this paragraph, one complete set of pleadings may be retained by each of the parties but any pleadings containing confidential information shall

remain subject to all other provisions of this protective order.

12. Nothing herein shall prevent disclosure of any confidential information (1) by the producing party or (2) to any employee or officer of the producing party or (3) to any person, no longer affiliated with the producing party, who either authored, in whole or part, or who received the confidential information in confidence prior to the initiation of this litigation.

13. Nothing in this Order shall be deemed a waiver of any right any party otherwise might have under the Federal Rules or the doctrines of attorney-client privilege, attorney work product, or any other privilege.

14. This Order shall survive the final termination of this action with respect to any confidential information. The Court shall retain jurisdiction over the parties and counsel for the parties as necessary to enforce this Order.

SO ORDERED:

Dated: Central Islip, New York
      July 31, 2008

                                  /s/ E. Thomas Boyle
                                  HON. E. THOMAS BOYLE
                                  United States Magistrate Judge